UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.  13-80054-CR-MARRA

UNITED STATES OF AMERICA,

      Plaintiff,

vs.

DONTAVIOUS BLAKE,

      Defendant.

_____/

## DEFENDANT BLAKE'S AMENDED SENTENCING MEMORANDUM

      Mr. Dontavious Blake and Ms. Tara Jo Moore have been found guilty of sex trafficking of minors in violation of 18 U.S.C. § 1591(b).  A presentence report ("PSR") has been prepared and submitted.  Challenges to statements of fact in the PSR have been made and remain to be addressed at a sentencing hearing.  Those factual challenges are not the focus of this memorandum.  The PSR has calculated the Sentencing Guidelines in a manner which concludes that the Sentencing Commission's recommended sentence would be the same as it would have been if the Defendants had murdered the minors: life without parole.  This memorandum will discuss those calculations and then address the unreasonableness of their apparent recommended sentence of imprisonment for life. It will advocate that a sentence of 12½ years, which would be a within-range Guidelines sentence if Mr. Blake had killed the minor victims in a fit of rage and been convicted of voluntary manslaughter, would amount to a reasonable sentence for Mr. Blake.[1]

---

1.  In his original sentencing memorandum, Mr. Blake advocated that 11 years would be a within-range Guidelines sentence if he had been convicted of voluntary manslaughter for killing T.H. and E.P. in a sudden rage.  That was erroneous because if so convicted, Mr. Blake's range would be 151-188 months.  Hence, 12½  years, not 11 years, would be a within-range sentence.

Sex offenses involving underaged victims are emotionally challenging for all involved in the court system.  Just as with any other criminal offense, however, it is necessary to assess the situation objectively to arrive at a fair, just and reasonable sentence.  To be fair, just and reasonable, sentences for such offenses should be (1) calibrated to avoid both unwarranted disparity from sentences imposed upon others who have engaged in similar offense conduct and unwarranted uniformity with sentences imposed upon others who have engaged in dissimilar offense conduct and (2) proportionate to the punishment imposed for more serious or less serious offenses.  The United States Sentencing Commission is an agency like any other.  Because the Sentencing Commission's Guidelines lack the force of law, as the Supreme Court held in *United States v. Booker*, 534 U.S. 220, 245, 264 (2005), sentencing courts are not bound to adhere to them.  But, in light of the Sentencing Commission's relative expertise, sentencing courts "must consult those Guidelines and take them into account when sentencing."  *Id.*  The deference to the Guidelines is not absolute or even binding; rather, as in considering any agency determination, "[t]he weight of such a judgment in a particular case will depend the thoroughness evident in [the agency's] consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking the power to control."  *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944).  In keeping with those principles and the factors listed in 18 U.S.C. § 3553(a), the Court should reject the Sentencing Commission's suggestion of life imprisonment for Dontavious Blake and instead impose a sentence of 12½ years.

## I   Calculation Of The Applicable Guidelines Range

A district court should "begin all sentencing proceedings by correctly calculating the applicable Guidelines range," *Gall v. United States*, 552 U.S. 38, 49 (2007), and then consider the

factors listed in 18 U.S.C. § 3553(a) before imposing a final sentence.  It is thus necessary as a first order of business to decide the applicable Sentencing Guidelines range before turning to the determination of a reasonable sentence in light of the 3553(a) factors.  The party seeking any adjustment to the base offense level has the burden of establishing the applicability of said adjustment and "must establish the factual predicate justifying the adjustment."  *United States v. Alfaro*, 919 F.2d 962 (5th Cir. 1990).  Regarding any upward adjustment sought by the Government, unless "the Government's position is unambiguously correct—we apply the rule of lenity and resolve the ambiguity in . . . [the defendant's] favor." *United States v. Granderson*, 511 U.S. 39, 54 (1994).

### A.    The Guidelines Base Offense Level is 30

The parties concur that U.S.S.G. § 2G1.3(a)(2) provides a base offense level of **30** for a defendant such as Mr. Blake who has been convicted under 18 U.S.C. § 1591(b)(2).

### B.    Two Levels Are Added Because A Computer Was Involved

The PSR recommends a two-level upward adjustment to the base offense level on the basis that a computer (instead of a newspaper) was used to advertise for customers for T.H. and E.P. and hence falls within the language of U.S.S.G. § 2G1.3(b)(3).  PSR paragraphs 49 and 58.  Mr. Blake does not contest the application of that enhancement provision.  It is noteworthy, however, that in the modern age, where cell phones are mini-computers, it is an "adjustment" that will apply in virtually every case.  Thus, his base offense level would adjust from 30 to **32**.

### C.    Enhancing For A Commercial Sex Act Is Inappropriate Double Counting

The PSR recommends that because "the offense involved a commercial sex act, the offense level is increased by two levels, § 2G1.3(b)(4)(B)."  PSR paragraphs 48 and 57.  The Government supports that recommendation. Government's Sentencing Memorandum, Pacer Doc. 287, pp. 13-14.

The Court should reject that recommendation because applying that enhancement in this case would constitute improper double counting.  It is an element of the offense that the Defendants caused the victims to engage in commercial sex acts.  Therefore, that harm has been fully accounted for in the base offense level.  "Impermissible double counting occurs . . . when one part of the Guidelines is applied to increase a defendant's punishment on account of a kind of harm that has already been fully accounted for by application of another part of the Guidelines."  *United States v. Matos-Rodriguez*, 188 F.3d 1300, 1309 (11th Cir. 1999) (internal citation omitted).  Subsection 2G1.3(b)(4) was added to section 2G1.3 in 2007 by Amendment 701.  The Sentencing Commission explained the intended ambit of the enhancement as follows:

> First, every conviction under 18 U.S.C. § 1591 necessarily involves a commercial sex act.  With the base offense levels being determined based on the statute of conviction, the amendment clarifies that *§ 2G1.3(b)(4)(B), which provides a two-level enhancement if the offense involved a commercial sex act, does not apply if the defendant is convicted under 18 U.S.C. § 1591. * * * [The] limitation on application of subsection (b)(4)(B) avoid[s] unwarranted double counting*.

United States Sentencing Commission Guidelines Manual, Appendix C (emphasis added).  Inasmuch as the Sentencing Commission expressly did not intend for the enhancement for commercial sex act to apply to a conviction under 18 U.S.C. § 1591, for the clearly correct reason that to do so would constitute double counting, the Court should not enhance the offense level on that basis.

## D.  The Defendants Did Not Abuse Any Quasi-Parental Authority Over T.H. and E.P.

The PSR recommends a two-level upward adjustment to the base offense level on the purported basis that T.H. and E.P. were minors "in the custody, care, or supervisory control of the defendant[s]" as those terms are used in U.S.S.G. § 2G1.3(b)(1)(B).  That recommendation is

unfounded.  Section 2G1.3(b)(1) provides: "If (A) the defendant was a parent, relative, or legal guardian of the minor; or (B) the minor was otherwise in the custody, care, or supervisory control of the defendant, increase by 2 levels."  Because neither defendant was a parent, relative or legal guardian of T.H. and E.P., only subsection (B) is at issue.  Nevertheless, subsection (A) remains relevant to the analysis because the word "otherwise" links subsections (A) and (B).  As the Court of Appeals observed in *United States v. Brooks*, 610 F.3d 1186, 1200-01 (9th Cir. 2010):

> [T]he use of the adverb 'otherwise' in subsection (B) does not entirely divorce subsection (B) from its alternative in subsection (A). If 'otherwise' means *any* type of 'custody, care, or supervisory control,' then subsection (A) is wholly superfluous.  Such an interpretation would also threaten to merge the enhancement into the definition of the underlying offense.  We therefore conclude that subsection (B) refers to a defendant's role with respect to the minor that is comparable to that of the parents, relatives and legal guardians covered by subsection (A).  Indeed, care, custody and supervisory control of minors are quintessential duties of subsection (A) defendants.  The word 'otherwise' indicates that a subsection (B) defendant exercises such parent-like care, custody or supervisory control, albeit 'in a different way or manner' or 'in different circumstances' than traditional guardians.  Webster's New International Dictionary 1538 (3d ed. 1976).

(emphasis in original).

The Sentencing Commission provided guidance to the scope of U.S.S.G. § 2G1.3(b)(1) which supports the conclusion that subsection (B) only applies to defendants who exploit a relationship with a minor that is akin to a parent, relative or guardian.  U.S.S.G. § 2G1.3 Application Note 2(A) provides examples of individuals as to whom the enhancement for custody, care or supervisory control would apply: "teachers, day care providers, baby-sitters or other temporary caretakers" acting *in loco parentis* in a position of authority over the minor that exists separate and apart from the conduct giving rise to the offense.  Without that limitation, the adjustment would

5

apply in every case of sex trafficking of minors, which is clearly not the ambit of the adjustment. Thus the Application Note explains that, although the enhancement is intended to have "broad application," the Court must "look to the actual relationship that existed between the defendant and the minor and not simply to the legal status of the defendant-minor relationship." As stated by the Court of Appeals in *United States v. Brooks*, supra, where a defendant is acting *in loco parentis* "it is the abuse of [that] authority of the minor that makes the offense conduct more egregious and thus worthy of enhancement." 610 F.3d at 1201.

The Government cannot sustain its burden of establishing that the enhancement under U.S.S.G. § 2G1.3(b)(1) unambiguously applies to the defendants. Unless "the Government's position is unambiguously correct—we apply the rule of lenity and resolve the ambiguity in . . . [the defendant's] favor." *United States v. Granderson*, 511 U.S. 39, 54 (1994). Therefore, Mr. Blake's objection to the enhancement (PSR paragraph 47 and 56) should be sustained.

**E.  The Defendants Did Not Compromise The Voluntariness of T.H.'s or E.P.'s Behavior**

The PSR recommends a two-level upward adjustment to the base offense level on the purported basis that the defendants "otherwise unduly influenced" T.H. and E.P. to engage in prohibited sexual conduct as those terms are used in U.S.S.G. § 2G1.3(b)(2)(B). Clearly, under that language, it is not enough that the defendant influenced a minor to engage in prohibited sexual conduct – he must have *unduly* influenced it. "Undue influence" is defined in the Guidelines as activity that "compromise[s] the voluntariness of the minor's behavior." U.S.S.G. § 2G1.3 Application Note 3(B). *Accord United States v. Patterson*, 576 F.3d 431, 443 (7th Cir. 2009) ("[T]he defining characteristic of undue influence is that it involves a situation where the influencer has succeeded in [his efforts at] altering the behavior of the target." (internal quotation marks

6

omitted)).  Application Note 3(B) directs that, "[i]n determining whether subsection (b)(2)(B) applies, the court should closely consider the facts of the case to determine whether a participant's influence over the minor compromised the voluntariness of the minor's behavior."

There is a rebuttable presumption that a defendant unduly influenced a minor to engage in sexual conduct when the defendant is at least ten years older than the victim.  U.S.S.G. § 2G1.3 Application Note 3(B). The presumption of undue influence applies in this case because Mr. Blake is at least ten years older than T.H. and E.P.   However, that presumption does not hold in this particular case because, as the trial record clearly established, T.H. and E.P. were predisposed to engage in commercial sex acts before they met the defendants.  See *United States v. Saunders*, 318 F.3d 1257, 1271 n. 22 (11th Cir. 2003) (the sentencing Court's findings of fact "may be based on evidence heard during trial").   Given the trial evidence, despite the difference in their ages the defendants did nothing that compromised T.H.'s and E.P.'s volition, however misguided it may have been.  Under such circumstances, the Government cannot sustain its burden of establishing that the enhancement under U.S.S.G. § 2G1.3(b)(1) unambiguously applies to the Defendants.  Accord *United States v. Myers*, 481 F.3d 1107 (8th Cir. 2007) (District Court correctly rejected the undue influence enhancement); *United States v. Calvo*, 2015 WL 106850 (9th Cir. 2015, unpublished) (District Court incorrectly applied the undue influence enhancement).  Therefore, Mr. Blake's objection to the enhancement (PSR paragraphs 48 and 57) should be sustained.

> **F.    Co-Defendants Blake and Moore Were Partners In An Enterprise Involving Various Prostitutes, Including The Two Minors, None Of Whom Were "Participants" As That Term Is Used In The Sentencing Guidelines**

As stated in the PSR at paragraph 38, "*Dontavious Blake and Tara Jo Moore* jointly ran a

prostitution business and *are equally culpable*." (Emphasis added) Nevertheless, the PSR at paragraphs 52 and 61 recommends a four-level upward adjustment to the base offense level on the basis that Mr. Blake "was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." It is settled law that the determination of a defendant's role in "the offense" is restricted to a determination of the defendant's role in "the offense(s) of conviction;" that it is improper to consider his role in other conduct, particularly acquitted conduct. *United States v. Rodgers*, 951 F.2d 1120 (11th Cir. 1992). A "participant" is defined in the Guidelines as a person who is criminally responsible for the commission of the offense of conviction. U.S.S.G. § 3B1.1 Application Note 1. T.H. and E.P. are clearly victims, not "participants" as that term is defined by the Guidelines. There were no other "participants" in the offenses of conviction.

The adult prostitutes who worked for Mr. Blake and Ms. Moore were alleged to have been "victims" of the counts on which the Court directed verdicts of not guilty. They were not co-defendants (potential or otherwise) and hence not "participants." In any event, the court is precluded from considering Mr. Blake's role vis-a-vis other participants in acquitted conduct. *United States v. Rodgers*, supra. It necessarily follows from *United States v. Rodgers* that the Court cannot consider the the activities surrounding acquitted conduct in determining whether the defendants' involvement with T.H. and E.P. was "otherwise extensive." The Government cannot sustain its burden of establishing that the enhancement under U.S.S.G. § 3B1.1(a) unambiguously applies to the defendants. *Accord United States v. Martinez*, 584 F.3d 1022 (11th Cir. 2009). Therefore, Mr. Blake's objection to the enhancement (PSR paragraphs 52 and 61) should be sustained.

**G.     The Offense Level Is Correctly Adjusted Upwards 2 Levels On
The Basis That The Defendants Were Convicted Of Sex
Trafficking Two Different Minors; It Should Not Be
Redundantly Adjusted Upwards Another 5 Levels On The Same
Basis For A Combined Total Adjustment Of 7 Levels**

The PSR, at paragraphs 64 - 67, correctly calls for a 2 level upward adjustment through
"grouping" on the basis that the Defendants were convicted of sex trafficking two minors.  The PSR
then redundantly suggests at paragraph 68 that there should be another 5 levels upward adjustment
on the basis that sex trafficking two minors amounted to "engage[ment] in a pattern of activity
involving prohibited sexual conduct."   The Government concurs.   Government's Sentencing
Memorandum, Pacer Doc. 287, p. 16 ("Blake and Moore engaged in a pattern of activity involving
prohibited sexual conduct because they were convicted of sex trafficking two minor victims").
There is no "pattern" beyond the conduct that gave rise to the upward adjustment for grouping of the
two offenses.   Leaving aside that a pattern is usually more than two and that a normal reading of
"pattern" is best supported by an enhancement when there are two predicates (which may occur
during the commission of the enhanced offense) plus the offense itself, the application in the case
at bar is erroneous as amounting to double counting of the exact same harm.  *Cf.  United States v.
Rothenberg*, 601 F.3d 621, 624 n.4 (11th Cir. 2010).   "Impermissible double counting occurs . . .
when one part of the Guidelines is applied to increase a defendant's punishment on account of a kind
of harm that has already been fully accounted for by application of another part of the Guidelines."
*United States v. Matos-Rodriguez*, 188 F.3d 1300, 1309 (11th Cir. 1999) (internal citation omitted).
Therefore, in light of the fact that the 2 level adjustment is clearly mandated, the court should find

that the government has not established that the 5 level adjustment applies on the same factual basis.[2]

## II    The Court, In Determining A Sentence That Is Sufficient But Not Greater Than Necessary, Is Forbidden To Presume That The Sentence Recommended By The Sentencing Guidelines Is Reasonable

As this Court is well aware, 18 U.S.C. § 3553(a) mandates the imposition of a sentence that is "sufficient, but not greater than necessary" to achieve a reasonable, i.e., fair and proportionate sentence in light of the listed statutory factors.  The "sufficient, but not greater than necessary" provision is not just another factor to be considered along with other 3553(a) factors, but rather creates an over-arching value regarding the exercise of sentencing discretion in determining a reasonable sentence.  It should be understood as creating a utilitarian presumption of the lowest punishment necessary to accomplish the goal of deriving a fair and proportionate sentence in light of the "sufficient, but not greater than necessary" language and the 3553(a) factors.  See, e.g, Kimbrough v. United States, 552 U.S. 85, 110 (2007) ("[T]he crack/powder disparity produces disproportionately harsh sanctions, i.e. sentences for crack cocaine offenses 'greater than necessary' in light of the purposes of sentencing set forth in § 3553(a)."). 18 U.S.C. § 3553(b), which required the Court to impose a sentence as recommended by the United States Sentencing Guidelines absent a ground for departure, was found to be unconstitutional by the Supreme Court in United States v. Booker, 534 U.S. 220 (2005).  The Supreme Court thereafter clarified that, in light of its ruling in

_____

2. The Government might argue that if the Court is limited to applying one adjustment or the other, it should apply the 5 level increase for "pattern of activity" rather than the 2 level increase for grouping.  That argument would be erroneous because the Guidelines instruct at section 1B1.1 that adjustments must be made sequentially.  See United States v. Houser, 70 F.3d 87, 91-92 (11th Cir. 1995) (Sentencing Court must apply the Guidelines sequentially).  The adjustment for grouping is a Chapter 3 adjustment, while the adjustment for pattern of activity is a Chapter 4 adjustment. Therefore, the Court must consider the grouping adjustment and apply it before considering the pattern of activity adjustment.

*Booker*, the sentence recommended by the Sentencing Guidelines is nothing more than a starting point for analysis and a sentencing court errs if it presumes that the sentence recommended by the Sentencing Guidelines is reasonable.  *Nelson v. United States*, 555 U.S. 350 (2009).  Accord *United States v. Hunt*, 459 F.3d 1180, 1184 (11th Cir. 2006) ("If *Booker* is to mean anything, it must be that district courts are obligated to impose a reasonable sentence, regardless of the Guidelines range, so long as the Guidelines have been considered) and United *States v. Zavala*, 443 F.3d 1165, 1171-72 (9th Cir. 2006) ("Here, the district court gave the Guideline calculation exaggerated weight, treating it as a presumptive sentence from which the court was 'free to depart.'  This was error.").  The Presentence Report prepared in this case in Part E invites the error proscribed by the Supreme Court by strongly implying that Mr. Blake has some kind of burden to establish a basis for departure in order to overcome a presumption that the Court should impose the sentence of imprisonment for life recommended by the Sentencing Guidelines.  The Court should decline that invitation and decide upon a sentence that is "sufficient, but not greater than necessary" to achieve a fair and proportionate sentence in light of the listed statutory factors, including the recommendation of the Sentencing Guidelines as an advisory starting point but with no presumption of its reasonableness.

It should be noted that the Government tacitly invites the Court to apply the wrong standard in its Sentencing Memorandum, Pacer Doc. 287, pp17-19, by pointing to appellate standards of review.  As stated by the Eleventh Circuit Court of Appeals,

> 'A sentence may be unreasonable if it is the product of a procedure that does not follow *Booker's* requirements, regardless of the actual sentence.' *United States v. Hunt*, 459 F.3d 1180, 1182 n.3 (11th Cir. 2006).  While it is permissible for appellate courts to apply a presumption of reasonableness to a sentence within a properly calculated guidelines range, 'the sentencing court does not enjoy the benefit of a legal presumption that the Guidelines sentence should

apply.' *Rita*, 551 U.S. at 351.  ***If a district court . . . treats the range as presumptively reasonable, that is procedural error***.

*United States v. Hill*, 643 F.3d 807, 880 (11th Cir. 2011) (emphasis added).

## A.  The Need To Avoid Unwarranted Disparity And Unwarranted Uniformity

Part of the determination of a reasonable sentence is consideration of the need to avoid unwarranted disparity in sentences imposed for offenders who have engaged in significantly similar offense conduct and unwarranted uniformity with sentences imposed upon others who have engaged in significantly dissimilar offense conduct.  Put simply, the Court should avoid both unwarranted disparity and unwarranted uniformity.  See *Gall v. United States*. 552 U.S. 38, 55 (2007) (affirming a sentence where "it is perfectly clear that the District Judge considered the need to avoid unwarranted disparities, but also considered the need to avoid unwarranted *similarities*" (emphasis in original)).  The Guidelines range represents the Sentencing Commission's opinion about what the sentence should be in an "ordinary" case, and therefore serves as the sentencing Court's "starting point" in selecting a sentence.  *Kimbrough v. United States*, 552 U.S. 85, 108 (2007).  The Sentencing Commission declared in Chapter One, Part A, subpart 4(b), that,

> The Commission intends the sentencing courts to treat each guideline as carving out a 'heartland,' a set of typical cases embodying the conduct that each guideline describes.  When a court finds an atypical case, one to which a particular guideline linguistically applies but *where the conduct significantly differs from the norm*, the court may consider whether a departure is warranted.

(Emphasis added).  The case at bar is not an "ordinary" case and hence is not in the heartland of sex trafficking cases.

In 2013, Assistant United States Attorneys Stephen C. Parker and Jonathan T. Skrmetti, who specialize in prosecuting sex trafficking cases, published an article in the University of Memphis

Law Review, <u>Pimps Down: A Prosecutorial Perspective On Domestic Sex Trafficking</u>, 43 U. Mem.

L. Rev. 1013, in which they describe the heartland of such cases as follows:

>    The authors of this Article have observed three broad categories of techniques used by domestic sex traffickers to exploit their victims.  While every case is unique and any given domestic sex trafficking case may defy these categories, they provide a framework for discussion and describe all the domestic trafficking cases the authors have prosecuted to date.  The first and rarest method is to kidnap a victim and enslave her through threats and force. * * * [Most] domestic sex traffickers typically begin their exploitation through more subtle means.

>    The second method used by domestic sex traffickers involves using fraud to gain access to a victim and the providing drugs and alcohol to incapacitate them.  The victim in this scenario never consents to the initial commercial sex act [which is thus a rape], and the trafficker leverages the psychological impact of that rape to further ensnare the victim.

>    Finally, the most common method used by domestic traffickers is referred to as 'grooming.'  By this method, traffickers convince juveniles and impressionable young women to engage in commercial sex for the trafficker's benefit.  This method usually starts with fraud and often escalates to violence.  The grooming process . . . relies on identifying vulnerabilities in prospective victims and then exploiting them.

>                                        * * *

>    After finding a potential victim, the grooming process commences with overwhelming flattery.  The trafficker continuously compliments the victim, takes the victim on dates, and, within a short time, professes love for the victim.  The victim, starved for a family relationship and pained by the absence of a loving father figure, rapidly develops feelings of love, trust, and dependence towards the trafficker.

>                                        * * *

>    The trafficker explains that the victim will make very large amounts of money while failing to mention that the victim will not get to keep much or any of it.  The trafficker promises the victim will only have to do this for a year or two.  Then, he might say, they can retire together, and the victim will never have to do this again.

>    It is at this point the victim, out of love and a desire to please the new father figure in her life, has sex with a customer for the first time.  This results in further compromise of an already wounded self-esteem, creating an even greater need for love and approval from the trafficker.  The trafficker makes it clear that he will hold

> all of the money earned so that he can guarantee that it is kept safe and used wisely; depriving the victim of money becomes an additional means of control. The key rule for the trafficker is 'Daddy handles all money.'

Id. at 1018-19; 1025-27. The case at bar differs from **all** of the sex trafficking of minors cases described above in at least three significant ways: (1) the victims were already sexually experienced before they met the defendants; (2) the defendants did not seek the victims out as workers, but rather the victims approached them seeking employment; and (3) the defendants did not defraud the victims in any way, did not use violence in any way, and did not cheat the victims out of their share of the proceeds or otherwise abuse them. Those distinguishing features do not excuse the defendants' conduct, but it certainly differentiates it from the typical, ordinary sex trafficking case. Those differences support the imposition of a lower punishment than the punishment prescribed for typical offenders.

### B.    The Need To Achieve Proportionality

Mr. Dontavious Blake and Ms. Tara Jo Moore have been found guilty of sex trafficking of minors. Their punishment should fit their crime by being proportionate. "The concept of proportionality is central to the Eighth Amendment. Embodied in the Constitution's ban on cruel and unusual punishments is the 'precept of justice that punishment for crime should be graduated and proportioned to [the] offense.'" *Graham v. Florida*, 560 U.S. 48, 59 (2010), quoting *Weems v. United States*, 217 U.S. 349, 367 (1910). In creating the Sentencing Guidelines, Congress sought to create a scheme that would enhance proportionality in sentencing. The United States Sentencing Commission expressly acknowledged that, "Congress sought proportionality in sentencing through a system that imposes appropriately different sentences for criminal conduct of differing severity." United States Sentencing Commission Guidelines Manual, p.3. The Commission's efforts to achieve

proportionality in its sentencing scheme have been spasmodic and uneven. The disproportionate sentence of life in prison that, according to the Government and the Probation Office, they recommend in the case at bar for Mr. Blake, assuming that the Court agrees with that assessment, reflects an instance where they have clearly failed to achieve proportionality.

In 2004, via Amendment 663, the Sentencing Commission increased the offense levels for homicide and kidnapping offenses in an effort to make them proportionate. Its reasons and results are as follows:

> The Commission increased the base offense level for kidnapping by eight levels, from a base offense level 24 to base offense level 32, effective May 30, 2003. This increase brought kidnapping without injury to within one level of the base offense of level 33 for second degree murder. The Commission examined data on second degree murder offenses and found that in 2002, courts departed upward from the guideline range in 34.3% of the cases. The Commission also received public comment expressing concern that an individual convicted of second degree murder . . . might serve as little as eight year's imprisonment. By increasing the base offense level in § 2A2.1 (Second Degree Murder) to level 38, the Commission has established an approximate 20-year sentence of imprisonment for second degree murder.

> Data also showed a high level of upward departure sentences for some other homicide offenses, such as voluntary manslaughter, which had a 28.6% upward departure rate in 2002. Based upon such indications that the sentences may be inadequate for these offenses, the Commission increased the base offense levels of many of the homicide guidelines to punish them more appropriately and **with an eye toward restoring the proportionality found in the original guidelines.** For example, the original base offense level of 28 for attempted first degree murder, § 2A2.1 (Assault with Intent to Commit Murder; Attempted Murder) is five levels lower than the original offense level of 33 for second degree murder. In this amendment, the five-level increase from a base offense level of 28 to 33 for attempted first degree murder mirrors the five-level difference that exists between the two. The amendment also increases the base offense levels in the guidelines for §§ 2A1.2, 2A1.3 (Voluntary

Manslaughter), 2A1.5 (Conspiracy or Solicitation to Commit Murder), and 2A2.1.

United States Sentencing Commission Guidelines Manual, Appendix C (emphasis added).   Given that the Sentencing Commission by its own account greatly increased the offense levels for homicide related offenses in an effort to achieve proportionality, it is instructive to compare the case at bar with homicide related offenses in terms of Guideline outcomes.

T.H. and E.P. were below the age of consent when they approached Mr. Blake and Ms. Moore seeking employment as prostitutes.   T.H. and E.P.  thereafter worked for Mr. Blake and Ms. Moore for a period of time as prostitutes in return for drugs and a share of the proceeds.   For that offense, the Presentence Report calculates (and the Government advocates) a total **offense level of 43**.   It is instructive to providing a proper perspective to the offense conduct to hypothesize other scenarios playing out.   In alternative scenarios, Mr. Blake and Ms. Moore hypothetically could have:

1.      Committed **First Degree Murder** by shooting both T.H. and E.P. in the head execution style with a firearm, which would derive a Guidelines total **offense level of 43**;

2.      Committed **Second Degree Murder** by torturing both T.H. and E.P. and, in the process, causing their deaths, which would derive a Guidelines total **offense level of 40**;

3.      Committed **Assault With Intent To Commit First Degree Murder** by shooting both T.H. and E.P. in the head with a firearm but miraculously only causing them each to live in a vegetative state, which would derive a Guidelines total **offense level of 39**;

4.      Committed **Solicitation To First Degree Murder** by hiring a hitman to murder T.H. and E.P., which would derive a Guidelines total **offense level of 39**;

5.      Committed **Voluntary Manslaughter** by killing T.H. and E.P. in a sudden quarrel or in heat

of passion, which would derive a Guidelines total **offense level of 31**; or

6.  Committed **Involuntary Manslaughter** by driving drunk and killing T.H. and E.P. in an accident on the way to meet a customer which would derive a Guidelines total **offense level of 20**.

By any fair measure, the "'precept of justice that punishment for crime should be graduated and proportioned to [the] offense.'" *Graham v. Florida*, 560 U.S. 48, 59 (2010), quoting *Weems v. United States*, 217 U.S. 349, 367 (1910), would place the offense conduct in the case at bar on the lower end of the foregoing spectrum. It is extremely disproportionate to place it at the high end of that spectrum (i.e., calling for a harsher punishment than if they had tortured T.H. and E. P. to death). In regard to the Commission's stated objective in 2004 of restoring proportionality when they increased the punishments for homicide, under the 2004 Guidelines the offense level for **voluntary manslaughter** was **29** and the offense level for offense level for **sex trafficking of a minor** was base level 24 +2 for use of a computer +2 for commercial sex act = **28**. In other words, in 2004 the Sentencing Commission viewed sex trafficking of a minor as being roughly proportionate with voluntary manslaughter. Using the offense level of 29 for voluntary manslaughter, and adjusted upwards two levels to level 31 by grouping offenses, Dontavious Blake, in Criminal History category IV, would have an advisory Guidelines imprisonment range of **151 - 188 months**. It is respectfully submitted that a sentence within that range would be far more proportionate as equated with voluntary manslaughter at its current level instead of first degree murder.

## Conclusion

As stated at the outset of this memorandum, sex offenses involving underaged victims are emotionally challenging for all involved in the court system. Just as with any other criminal offense, however, it is necessary to assess the situation objectively to arrive at a fair, just and reasonable

sentence.  To be fair, just and reasonable, sentences for such offenses should be (1) calibrated to avoid both unwarranted disparity from sentences imposed upon others who have engaged in similar offense conduct and unwarranted uniformity with sentences imposed upon others who have engaged in dissimilar offense conduct and (2) proportionate to the punishment imposed for more serious or less serious offenses.  It is respectfully submitted that a sentence of 12½  years, for the reasons set forth above, would amount to a reasonable sentence for Mr. Blake.

Respectfully submitted,
MICHAEL CARUSO
FEDERAL PUBLIC DEFENDER

By:    s/Neison M. Marks
Neison M. Marks
Assistant Federal Public Defender
Court Assigned No. A5500635
450 South Australian Avenue
Suite 500
West Palm Beach, Florida  33401
Phone:  561-833-6288
Fax:      561-833-0368
Neison_Marks@fd.org

## CERTIFICATE OF SERVICE

I HEREBY certify that on **February 17, 2015,** I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or *pro se* parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

s/Neison M. Marks
Neison M. Marks

**SERVICE LIST**
**UNITED STATES OF AMERICA  v.  DONTAVIOUS BLAKE**
**Case No.   13-80054-Cr-Marra**


Neison M. Marks
neison_marks@fd.org
Assistant Federal Public Defender
450 S Australian Avenue
Suite 500
West Palm Beach, Florida 33401
Phone:   561-833-6288
Fax:       561-833-0368
Attorney for Defendant


Lothrop Morris
Lothrop.morris@usdoj.gov
Assistant United States Attorney
500 S Australian Avenue
Suite 400
West Palm Beach, Florida 33401
Phone:   561-820-8711
Fax:       561-820-8777
Attorney for Government


Peter T. Patanzo
Benjamin & Aaronson
1 Financial Plaza
Suite 1615
Fort Lauderdale, FL 33394
954-779-1700
Fax: 779-1771
Email: ppatanzo@bellsouth.net
Attorney for Defendant Tara Moore


Frances Weisberg
U. S. Probation Officer
501 South Flagler Dr, Suite 400
West Palm Beach, Florida 33401
Phone: 561-804-6899